**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |  |
|---|---|
| LAKYSHA S. TRUESDALE,<br>　　　Plaintiff<br><br>　　v.<br><br>MOUNTAIN PRODUCTIONS, INC., *et al.*,<br>　　　Defendants<br><br>　　v.<br><br>CONDER, INC.,<br><br>　　　Third-Party Defendant | Civil Action No. 1:17-cv-557 (CKK) |

**MEMORANDUM OPINION**
(November 22, 2017)

This case concerns the death of a man who fell while helping to construct a concert stage at Robert F. Kennedy Memorial Stadium. Plaintiff, the decedent's daughter, has brought this lawsuit alleging that several of the businesses involved in the construction of that stage were negligent in failing to provide the proper protective equipment to prevent her father's fall. Two of the Defendants, Mountain Productions, Inc. ("Mountain") and It's My Party, Inc. ("IMP"), have filed third-party complaints against the decedent's employer, Conder, Inc. (otherwise known as Charm City Crewing Company). Presently before the Court are Conder's motions to dismiss those third-party complaints. Upon consideration of the pleadings,[1] the relevant legal

---

[1] The Court's consideration has focused on the following documents:
- Conder's Mot. to Dismiss Third-Party Compl. by Mountain, ECF No. 29 ("Mountain Mot.");
- Conder's Mot. to Dismiss Third-Party Compl. by IMP, ECF No. 30 ("IMP Mot.");
- Mountain's Opp'n to Conder's Mot. to Dismiss, ECF No. 31 ("Mountain's Opp'n");
- IMP's Opp'n to Conder's Mot. to Dismiss, ECF No. 32 ("IMP's Opp'n");

1

authorities, and the record as a whole, the Court will GRANT Conder's [29] Motion to Dismiss the Third-Party Complaint by Mountain, but DENY Conder's [30] Motion to Dismiss the Third-Party Complaint by IMP.

### I. BACKGROUND

Plaintiff filed this action against Defendants Mountain, IMP and Washington Convention and Sports Authority in the Superior Court of the District of Columbia. Compl., ECF No. 1-2. Plaintiff alleged that on June 30, 2015, her father, James L. Truesdale, was working to construct a concert stage at the Robert F. Kennedy Memorial Stadium at a jobsite controlled by one or more of the Defendants. *Id.* ¶ 11. Mr. Truesdale was a day laborer employed by Conder, a company that was not named as a Defendant in Plaintiff's lawsuit. *Id.* ¶ 12. He fell from a platform while working and died eight days later. *Id.* ¶¶ 13, 15. Plaintiff alleges that the Defendants failed to ensure that the platform from which her father fell had "appropriate fall protection equipment and/or other necessary systems in place to prevent the employees of subcontractors from falling off of heights greater than six feet, which is required, *inter alia*, by federal OSHA regulations." *Id.* ¶ 14. Plaintiff asserted two counts against the Defendants: one for "negligence; wrongful death" and another for "negligence; Survival Act." *Id.* ¶¶ 16-24. Defendant IMP removed Plaintiff's lawsuit to this Court. *See* Notice of Removal, ECF No. 1.

Defendants IMP and Mountain then filed third-party complaints against the decedent's employer, Conder. *See* Def. It's My Party, Inc.'s Third-Party Compl. Against Conder Inc., ECF

---

- Conder's Reply in Support of Mot. to Dismiss Compl. by Mountain, ECF No. 33 ("Mountain Reply"); and
- Conder's Reply in Support of Mot. to Dismiss Compl. by IMP, ECF No. 34 ("IMP Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

No. 17 ("IMP Compl."); Def. Mountain Production, Inc.'s Third-Party Compl. Against Conder Inc., ECF No. 19 ("Mountain Compl."). In its third-party complaint, IMP alleges that Conder entered into an agreement with IMP "to provide employees and/or agents to build the concert stage . . . and to provide vetting, training, instruction, supervision and oversight, including but not limited to onsite supervision of these employees and/or agents." IMP Compl. ¶¶ 4, 14. IMP also states that "[p]ursuant to the terms of the Agreement, [Conder] agreed to indemnify IMP for any negligence by [Conder] occurring during [Conder's] operations pertaining to the Concert, and to add IMP as an additional insured to [Conder's] commercial general liability insurance policy." *Id.* ¶ 15. IMP alleges that it had an ongoing relationship with Conder and that the two businesses had entered into numerous similar agreements in the past. *Id.* ¶ 17. IMP claims that it was Conder's duty and responsibility to provide fall protection equipment or other necessary systems to prevent falling—not IMP's. *Id.* ¶ 22. IMP asserts causes of action against Conder for breach of contract and implied indemnity. *Id.* ¶¶ 25-34.

Defendant Mountain has also asserted causes of action against Conder for breach of contract and implied indemnity. Mountain Compl. ¶¶ 22-32. However, the factual allegations underlying those claims are different than IMP's. Mountain alleges that it "entered into a contract with IMP and/or one of its affiliates to provide staging for a pending concert, whereby IMP would provide local labor for work to be done at RFK from on or about June 28 to July 7, 2015." *Id.* ¶ 12. Mountain does not claim that it contracted with Conder. Instead, Mountain alleges that "[u]pon information and belief, on or before June 25, 2015, IMP contracted with [Conder] to provide vetting, training, instruction, supervision, oversight, and employees to perform work at RFK from on or about June 28 to July 7, 2015, whereby Mountain was an intended beneficiary of this contract." *Id.* ¶ 13. Mountain also states that "[b]y providing

3

employees to work at RFK from June 28 to July 7, 2015, Mountain had a special relationship with [Conder] by virtue of the day-to-day interaction and decision-making between the parties regarding the work at RFK." *Id.* ¶ 15.

Conder has moved to dismiss both of these third-party complaints under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint (including a third-party complaint) on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient *factual* allegations that, if true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *See In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).

4

## III. DISCUSSION

### A. The D.C. Workers' Compensation Act and *Myco, Inc. v. Super Concrete Co.*

The main legal principle underlying Conder's motions to dismiss is that as the decedent's employer, Conder was liable for his fall regardless of fault pursuant to the District of Columbia's Workers' Compensation Act ("WCA"). The remedies provided for by the WCA are exclusive. The WCA states that "[t]he liability of an employer prescribed in § 32-1503 [*i.e.*, for compensation for injury or death without regard to fault] shall be exclusive and in place of all liability of such employer to the employee, his legal representative, spouse or domestic partner, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law on account of such injury or death." D.C. Code § 32-1504(a). No party in this case disputes that this exclusivity would bar Plaintiff herself from suing Conder, which she has not done. However, Conder claims that this exclusivity goes a step further, and also prevents Third-Party Defendants from recovering against it. Third-Party Defendants disagree.

The foundational case on this topic is *Myco, Inc. v. Super Concrete Co.*. In *Myco*, the District of Columbia Court of Appeals addressed "the effect of the District of Columbia's Workers' Compensation Act on the right of a third party to indemnity from the employer of an injured worker seeking recovery in tort from that third party." 565 A.2d 293, 294 (D.C. 1989). In that case, Super Concrete Co. had contracted with Myco, Inc. for Myco to work on a power washer on Super Concrete's premises. *Id.* Later, an employee of Super Concrete was killed while using the washer. *Id.* The deceased employee's wife filed a workers compensation claim, and Super Concrete's insurer paid death benefits to his estate. *Id.* The wife later filed a wrongful death action against Myco claiming that Myco's negligence had caused her husband's death. *Id.* Myco filed a third-party complaint against Super Concrete seeking indemnification.

5

*Id.* at 294-95.  The trial court dismissed the third-party complaint and the Court of Appeals affirmed.  *Id.*

The *Myco* court acknowledged that although "nothing precludes [an] employee from seeking injury-related damages from [a] third-party tortfeasor[,] . . . when the third party, to protect against an adverse monetary judgment, seeks indemnity from the employer for having contributed to or caused the injury for which the employee seeks damages, that cause of action runs head-on into the exclusivity provision of the [WCA]."  *Id.* at 296–97.  That being said, the *Myco* court noted two circumstances where indemnification is allowed despite the exclusivity of the WCA.  First, with respect to claims based on express indemnification agreements—which were not actually at issue in *Myco*—the court noted that "[i]t is well settled in most jurisdictions that when the third party's claim against the employer is for indemnity pursuant to an express contractual provision, the exclusivity provisions of workers' compensation laws do not bar the indemnification."  *Id.* at 297.  Second, the Court determined that "implied indemnification" is also available, despite the exclusivity of the WCA, in situations where the third party and the employer "'stand in a special legal relationship that carries with it the obligation . . . to indemnify the third party.'"  *Id.* at 299 (quoting Larson, *Third-Party Action Over Against Workers' Compensation Employer*, 1982 Duke L. J. 483, 505-06).  "In order to establish the right to this particular type of implied indemnity, the obligation must arise out of a specific duty of defined nature—separate from the injury to the employee—owed to the third party by the employer."  *Id.*  In other words, "when the indemnity is based on a special legal relationship existing separate and apart from any liability which the employer might have had to the injured employee, indemnity is allowed."  *Id.*  Examples of such relationships include bailors and bailees, lessors and lessees

6

and principals and agents. *Id.* The *Myco* court held that the relationship between Myco and Super Concrete was not sufficient and that Myco's claim was accordingly barred.

Based on the preceding law, the viability of the third-party complaints in this case depends on whether the Third-Party Defendants have plausibly pled the existence of an express indemnification agreement or the type of "special relationship" that could support a claim for implied indemnity. The following sections of the Court's Opinion address whether the Third-Party Defendants have done so.

## B. Express Indemnity

Both Third-Party Defendants argue that their complaints against Conder can go forward on the basis of express agreements. As the issues related to the third-party complaints filed by IMP and Mountain differ in this regard, the Court will address each separately.

### 1. IMP

IMP alleges that it had an express oral contract with Conder that included an indemnification agreement. Specifically, IMP alleges that

> 14. On or before June 25, 2015, [Conder] entered into an oral agreement ("Agreement") with IMP pursuant to which [Conder] agreed to provide its employees and/or agents to build a concert stage at the Robert F. Kennedy Memorial Stadium for a concert that occurred on July 4, 2015 ("Concert"), and to provide necessary vetting, training, instruction, supervision, and oversight of its employees and/or agents on the date of the Incident.
> 15. Pursuant to the terms of the Agreement, [Conder] agreed to indemnify IMP for any negligence by [Conder] occurring during [Conder's] operations pertaining to the Concert, and to add IMP as an additional insured to [Conder's] commercial general liability insurance policy. *See*, Exhibit 2, Certificate of Liability Insurance.

IMP Compl. ¶¶ 14, 15. Conder concedes that it had an oral contract with IMP, but argues that IMP has not adequately pled that the contract contained an indemnification agreement.

7

The Court disagrees and concludes that IMP has plausibly pled an express indemnification agreement. As an initial matter, Conder appears to imply that it is impossible to adequately allege an indemnification agreement absent a written contract. IMP Reply at 3 ("it is illogical to argue that parties can truly agree to indemnify each other without any written agreement"). Conder has provided no authority for this proposition, and indeed concedes that "no D.C. Court has clearly stated that indemnification provisions must be written." *Id.* The Court is similarly unaware of any such rule, and concludes that the oral nature of the alleged agreement in this case is not alone a sufficient reason to dismiss IMP's claim at the pleading stage. *See Murray v. Lichtman*, 339 F.2d 749, 751 (D.C. Cir. 1964) (reversing dismissal of suit on oral indemnification agreement because "[i]f we assume [plaintiff's] allegations to be true, as we must, it appears that the parties entered into a valid contract" based on a "broad oral indemnity in return for . . . services").

The Court is also not persuaded by Conder's argument that IMP's contract claim has not been pled with sufficient particularity. The detail that Conder demands, such as "the limits" of the agreement and whether "the alleged indemnification included all damages, costs, expenses, claims, lawsuits, attorney fees, etc.," IMP Reply at 3, is not required at this stage of the case. IMP need not "plead every conceivable fact or face dismissal" of its contract claim; it is sufficient at this stage that IMP has "allege[d] with specificity the several terms of the oral contract and how [Conder] breached those terms." *Nattah v. Bush*, 605 F.3d 1052, 1058 (D.C. Cir. 2010).

IMP has done that here. IMP alleges that Conder agreed to provide employees or agents to construct a stage at a particular place on a particular date, and to provide the "necessary vetting, training, instruction, supervision and oversight" of these individuals. IMP Compl. ¶ 4.

The agreement also allegedly contained a promise by Conder to "indemnify IMP for any negligence by [Conder] occurring during [Conder's] operations pertaining to the concert, and to add IMP as an additional insured to [Conder's] commercial general liability insurance policy." *Id.* ¶¶ 14, 15. The complaint goes on to allege the specific ways in which Conder breached those terms—*i.e.*, by failing to perform the required supervision and oversight of its employees. *See, e.g.*, *id.* ¶ 29.

These allegations provide enough factual content to pass muster at the pleading stage. *See Ponder v. Chase Home Fin.*, 865 F. Supp. 2d 13, 19 (D.D.C. 2012) (finding that plaintiff's breach of contract claim was sufficient because it "identifie[d] the parties and material terms of the putative contracts, and allege[d] facts pertaining to both [plaintiff's] performance and [defendant's] breach."); *Winston & Strawn LLP v. Law Firm of John Arthur Eaves*, 47 F. Supp. 3d 68, 75 (D.D.C. 2014) (finding that plaintiff's breach of contract claim was sufficient because it "identifie[d] the parties to the contract and the contract's material terms, discusses [plaintiff's] performance of the contract, and alleges how [defendant] breached the contract."). The Court understands that Conder disputes IMP's claim on the merits, but there is no indication that IMP's allegations are merely an "attempt to disguise a precluded negligence claim into a fictitious contract dispute." IMP Mot. at 7. Conder will, of course, have the opportunity to attack the merits of IMP's claim at a later stage after a factual record has been developed. In the meantime, its dispute as to whether the alleged contract in fact existed is no reason to dismiss the complaint at this stage.

2. **Mountain**

Unlike IMP, Mountain does not claim to have any contract directly with Conder. Instead, Mountain argues that its third-party claims can move forward because it was a third party beneficiary of *IMP's* agreement with Conder. Assuming *arguendo* that if Mountain was a third

9

party beneficiary of that agreement, the WCA's exclusivity would not bar its claim against Conder, Mountain's claim nevertheless fails because it has not plausibly alleged that it was an intended third party beneficiary. Mountain alleges that:

> 23. On or before June 4, 2015, Mountain entered into a contract with IMP and/or one of its affiliates to provide a staging for a pending concert, whereby IMP would provide local labor for work to be done at RFK on the date of the Incident.
> 24. On or before June 25, 2015, IMP contracted with [Conder] to provide employees to perform work at RFK and provide necessary vetting, training, instruction, supervision, and oversight of its employees on the date of the incident.
> 25. Due to its prior contract with IMP, Mountain was an intended beneficiary of IMP's contract with [Conder].

Mountain Compl. ¶¶ 23-25.

These allegations are not sufficient to establish that Mountain was a third-party beneficiary. "[I]t is well established that, in order to be deemed a third-party beneficiary of a contract, a plaintiff must demonstrate that the parties to the contract 'intended to create and did create enforceable contract rights in the third party.'" *FiberLight, LLC v. Nat'l R.R. Passenger Corp.*, 81 F. Supp. 3d 93, 109 (D.D.C. 2015) (quoting *Sealift Bulkers, Inc. v. Republic of Armenia*, No. 95-1293(PLF), 1996 WL 901091, at *4 (D.D.C. Nov. 22, 1996)); *see also* Restatement (Second) of Contracts § 302 (1981). A purported third-party beneficiary must "plead facts showing that [it] is the intended beneficiary of the contract at issue." *Whiting v. AARP*, 701 F. Supp. 2d 21, 27 n.5 (D.D.C. 2010), *aff'd,* 637 F.3d 355 (D.C. Cir. 2011) (citing *Sidibe v. Traveler's Ins. Co.,* 468 F. Supp. 2d 97, 100–01 (D.D.C.2006)).

There are no facts in Mountain's bare-bones third-party complaint from which the Court could plausibly infer that Conder and IMP intended Mountain to be a third-party beneficiary of their contract. Mountain notes that it entered into an agreement with IMP around the same time that IMP entered into an agreement with Conder, but this fact alone cannot support a plausible inference that Mountain was an intended beneficiary of the latter agreement.

10

In sum, IMP's third-party claims can go forward on the basis of an express indemnification agreement. Mountain's may not.

**C. Implied Indemnity**

Finally, both Third-Party Defendants also attempt to avoid the exclusivity of the WCA by alleging an implied duty to indemnify. As explained in *Myco*, such claims are actionable if the third party can establish that the employer's alleged implied obligation to indemnify "arise[s] out of a specific duty of defined nature—separate from the injury to the employee—owed to the third party by the employer." *Myco*, 565 A.2d at 299. In such a case, "the indemnity is based on a special legal relationship existing separate and apart from any liability which the employer might have had to the injured employee." *Id.* at 299-300.

   **1. IMP**

IMP has plausibly alleged the type of relationship that could support a claim for implied indemnity. IMP and Conder allegedly have had a long-standing business relationship, pursuant to which IMP relies on Conder to handle personnel-related matters. Specifically, IMP has alleged that in addition to the business arrangement at issue in this case, it "had an ongoing relationship with [Conder] in which IMP entered into similar prior agreements with [Conder] pursuant to which [Conder] agreed to provide its employees and/or agents to build concert stages, and to provide the necessary vetting training, instruction, supervision, oversight and safety protection of these employees and/or agents." IMP Compl. ¶ 17. IMP alleges that it "reasonably relied upon [Conder's] industry knowledge and experience in vetting, training, staffing, supervising and overseeing" the work of its agents. *Id.* ¶ 18. IMP alleges that the parties' "long-standing relationship . . . created a specific duty by [Conder] to provide competent, well-trained and safety aware employees and/or agents with necessary equipment in

11

conformance to applicable industry standards to build a concert stage." *Id.* ¶ 32. Finally, IMP also alleges that Conder had included IMP as an additional insured on its insurance liability policy. *Id.* ¶ 15. Accepting these allegations as true and drawing all reasonable factual inferences for IMP, the relationship between IMP and Conder could plausibly support a claim that Conder had a distinct implied duty to indemnify IMP that would not be barred by the exclusivity of the WCA. *See Howard Univ. v. Good Food Servs., Inc.*, 608 A.2d 116, 118-24 (D.C. 1992) (holding that food services company that contracted with university to provide meals and "had day-to-day responsibilities such as keeping the kitchen facilities clean, supervising [its] employees in the kitchens, and implementing University food service policies," owed the university independent duties that could give rise to a claim for implied indemnity despite the exclusivity of the WCA because "[u]nlike the situation in *Myco*, which involved a one-time sale of equipment with follow-up service, the [food services company and the university] had an ongoing and comprehensive contractual relationship involving day-to-day interaction and decisionmaking.").

   2. **Mountain**

Mountain's claim for implied indemnity, on the other hand, is not supported by sufficient factual allegations. Mountain's third-party complaint merely alleges that "[d]ue to the day-to-day interaction and decisionmaking between Mountain and [Conder] from on or about June 28 through July 7, 2015, a special relationship existed between the parties." Mountain Compl. ¶ 30. As far as the Court can tell from Mountain's complaint, the extent of the relationship between Mountain and Conder was that they both contracted with IMP to help erect a stage for a particular concert, and then both worked toward that joint goal for a little over a week. Mountain's third-party complaint does not allege any "ongoing and comprehensive contractual

12

relationship," *Howard Univ.*, 608 A.2d at 124, like the relationship that allegedly existed between IMP and Conder. The facts in Mountain's complaint are instead more akin to the "one-time sale of equipment with follow-up service," *id.*, at issue in *Myco*. Even accepted as true, Mountain's allegations do not plausibly establish the type of relationship that could support a claim for implied indemnity under *Myco*. *See In re Fort Totten Metrorail Cases Arising Out of the Events of June 22, 2009*, 808 F. Supp. 2d 154, 163 (D.D.C. 2011) (dismissing indemnification claim on the basis of the exclusivity of the WCA "because the relationship between [the parties] is analogous to the facts in *Myco*."). The Court agrees with Conder that allowing Mountain's claim to go forward based on the minimal allegations in its third-party complaint would effectively "eviscerate the exclusivity of Worker's Compensation." Mountain Reply at 5.

In sum, the Court finds that IMP has plausibly pled an implied indemnification claim that could survive the exclusivity of the WCA, but Mountain has not done so.

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT Conder's motion to dismiss Mountain's third-party complaint, but DENY Conder's motion to dismiss IMP's third-party complaint. The Court finds that IMP has plausibly pled the existence of an express indemnification agreement and sufficient facts to support an implied indemnification theory as well. Mountain has not adequately pled either an express or implied indemnification claim. The dismissal of Mountain's third-party complaint, however, will be WITHOUT PREJUDICE. If Mountain can *in good faith* add factual allegations to its third-party complaint that would show that it was an intended beneficiary of IMP's contract with Conder, or that its relationship with Conder was sufficient to establish a claim for implied indemnity, it may seek leave to file an

13

amended complaint.  *See Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) (holding that an express invitation to amend the complaint renders an order of dismissal without prejudice not final and appealable because it "signal[s] that the district court is rejecting only the *complaint* presented, and that it intends the action to continue.") (emphasis in original).  An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
